| 95  | 629 |
| 110 | 716 |
| 95  | 629 |
| 122 | 225 |
| 95  | 629 |
| 136 | 533 |

## State of Iowa v. Otis Cross, Appellant.

**Larceny: INSTRUCTION.** An explanation that stolen hogs were in the possession of defendant because he was assisting another to sell them, not knowing them to be stolen, is sufficiently covered by an instruction that "if defendant assisted in driving the hogs to town and disposing of them, not knowing them to be stolen, he would not be guilty of larceny." While the court might have referred to the facts claimed in defense it was not bound so to do, especially where no instructions were asked.

**Minutes of Testimony.** Where a paper, asserted to contain the minutes before the grand jury, is certified by the clerk to be part of the case and it and the indictment have perforations indicating that the two were once attached, the witnesses whose names are indorsed on the indictment may be examined without notice, though said paper is not marked filed.

**Misconduct of Juror.** During deliberation it was stated that defendant had committed larceny before. It is not shown how many jurors heard it. It does not appear that this was believed or that it influenced the verdict. *Held*, no new trial will be granted.

**Practice on Appeal.** This court will not, after the affirmance of a conviction, reverse an order denying the appointment of an attorney to prosecute appeal, made below, on motion, after conviction,

*Appeal from Pottawattamie District Court.*—Hon. W. S. Lewis, Judge.

### Friday, October 11, 1895.

The defendant was convicted of the crime of larceny, and adjudged to be imprisoned in the state penitentiary at Ft. Madison for the term of two years. From that judgment he appeals.—*Affirmed.*

*L. T. Genung* and *Benjamin & Preston* for appellant.

*Milton Remley*, attorney general, for the state.

Robinson, J.—On the twenty-fourth day of July, 1893, five hogs owned by A. E. Patrick were stolen from a feed lot on his farm, four miles southeast of the town of Oakland, in Pottawattamie county. The fact that they were stolen is not denied. Between 4 and 5 o'clock of the next morning the defendant and a young man named Emerick were seen driving four of the hogs in the east part of Oakland, towards the stock yards. Three were driven to the yards, but one became exhausted, and stopped, before reaching them. The defendant spent some time in caring for that hog, and in trying to find a purchaser, and talked to different persons in regard to the hog. The statement that he made was that he was driving them from his mother's farm, which was southeast of that of Patrick. Emerick said little, if anything, in regard to them. It appears that the defendant was tried twice in the district court. During the second trial he testified in his own behalf, denying that he was in any manner responsible for the taking of the hogs. He admitted that he had helped to drive them a part of the distance to Oakland, but states that he did not know they had been stolen. He does not deny that, while he was helping to drive the hogs to the stock yards, he represented that they were being driven from his mother's farm, and that he was the most active in trying to sell them. He explains his connection with the affair by stating that on Sunday, the day before the hogs were stolen, Emerick, who was his cousin, told him that he had that day won five hogs from Patrick, in a game of poker, and that Patrick did not wish it known that he had lost the hogs in that manner, and desired Emerick to take them away early the next morning; that Emerick asked him to meet him the next morning at daylight, in the road near Bird's place, about two miles from Oakland; that he did so, and found Emerick with four hogs, which he helped drive

to town, and which Emerick said he had won from Patrick; that Emerick said he was not very well acquainted and asked the defendant to state that the hogs belonged to his mother, and that what he said and did was in consequence of these requests of Emerick; that he believed the statements made by Emerick to be true, and that he was rightfully in possession of the hogs.

I. The appellant complains that the district court failed to instruct the jury respecting his claim in regard to his connection with the theft of the hogs, and the evidence in support of it. The court charged the jury that "if the defendant assisted in driving the hogs to town and disposing of them, not knowing the same to have been stolen, then he would not be guilty of larceny." This necessarily directed the attention of the jury to the defense upon which the defendant relied, and the effect which his testimony, if true, should have; for that was designed to show that what he did was without knowledge that the hogs had been stolen, not that his acts, if performed with guilty knowledge and intent, were not sufficient to warrant his conviction. There was no material conflict in the evidence in regard to what he had actually done. Therefore the charge given was sufficient, especially as no further instruction was asked by the defendant. It was not necessary for the court to refer in its charge to the testimony upon which the claims of the defendant rested, although it would have been proper for it to have done so.

II. The appellant contends that the court erred in permitting the state to call and examine as witnesses T. J. Roy and J. M. Williams. Their names were indorsed on the indictment, and they were examined by the grand jury; but it is said that no minutes of their testimony before that body were attached to the indictment, or filed in the office of the clerk, and no notice of the intention of the state to examine the

witnesses was given. The appellant has caused to be
certified to this court, for inspection, the indictment
returned by the grand jury, and a paper purporting to
contain minutes of the testimony of all the witnesses
examined by the grand jury, whose names appear on the
indictment, including the two in question. That pape ·
has no formal caption, or separate filing mark; but the
certificate of the clerk shows that it is a part of the files
in the case, and justifies the conclusion that it was
returned with the indictment by the grand jury. The
indictment and the paper containing the minutes have
perforations which indicate that at one time they may
have been fastened together by an ordinary paper
fastener. It is quite possible that this was their condi-
tion when returned by the grand jury, and that they
were separated on the first trial of the case. In fact,
the transcript shows that the attorney for the state
claimed that this was true when objection was made to
the testimony of one of the witnesses in question and
overruled. The indictment is marked "Filed." It is
not necessary that the minutes of the evidence of the
witnesses examined before the grand jury be attached
to the indictment, but only that they be presented with
it, and filed by the clerk. Code, section 4293, 4421;
*State v. Postlewait,* 14 Iowa, 447; *State v. Hamilton,* 42
Iowa, 655; *State v. Briggs,* 68 Iowa, 420 (27 N. W. Rep.
358); *State v. Craig,* 78 Iowa, 638 (43 N. W. Rep. 462).
The evidence to which we have referred justifies the
conclusion that the minutes were returned with the
indictment, and deposited in the office of the clerk,
as a part of the record in the case. If they were
attached to the indictment, it is probable that the filing
mark on the latter was designed to apply to all. But,
if this were not so, the delivery of the minutes to the
clerk for the purpose of having them kept as a part of
the record is a sufficient filing to comply with the stat-
ute. *State v. Craig, supra,* and cases therein cited.

III.   One of the grounds of the motion for a new trial was alleged misconduct on the part of the jury. In support of that ground, one of the jury testified that while they were deliberating upon the verdict, and before it was agreed to, some of the jurors stated "that the defendant had been concerned in some kind of a transaction before; that he had taken twelve hogs from his uncle."   The circumstances under which the statements were made, and the number of jurors who heard them, are not shown.   No claim was made by the juror that the statements were believed, nor that they had any influence in the finding of the verdict, and we cannot presume that they were prejudicial. *State v. Woodson,* 41 Iowa, 425.   The evidence satisfies us that the defendant is guilty of the offense of which he was convicted, and we are of the opinion that the alleged misconduct of the jury furnishes no sufficient ground for a new trial.

IV.   A few weeks after the judgment was rendered by the district court the defendant applied to the court for an order for the appointment of an attorney to prosecute an appeal.   The application was supported by affidavits which showed that the defendant was without property, and without means to employ counsel to prosecute the appeal, and that, in the opinion of one of his attorneys, the record of the case showed reversible error.   The application was denied.   A notice of appeal from that order, as well as from the judgment, was duly served.   The appellant contends that the court erred in refusing to make the order in question, and, if it did not, asks that his attorneys be appointed, and that their compensation be fixed by this court.   No action which could now be taken would affect the judgment rendered by the district court.   The legality of that judgment was not in any manner affected by the action of the court in refusing to appoint an attorney for the defendant, and

we have found that the judgment was authorized and
is right.    The case is at an end, and the only effect of an
order by this court would be to enable the defendant or
his attorney to obtain compensation for services which
have already been rendered.    The purpose of the
statute, in permitting the appointment of an attorney
for the defendant in a criminal case, is to enable him
to have the assistance of an attorney in making his
defense, to prevent a failure of justice.    If the defense
has already been made, there is neither reason nor
authority for the appointment.    We may properly add
that in this case we do not find that, if the district court
had the power to make the appointment in question at
the time it was asked, there was any abuse of its discre-
tion in refusing to do so.    It is evident that action by
the court was not necessary to enable the defendant to
prosecute his appeal.    The judgment and order of the
district court are *affirmed*.